IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Kenneth Riggs; Ranee Riggs,                )
                                           )
                          Plaintiffs,      )       C.A. No. 8:08-73-HMH
                                           )
                vs.                        )       **OPINION & ORDER**
                                           )
The Dupps Company,                         )
                                           )
                          Defendant.       )

This matter is before the court on The Dupps Company's ("Dupps") motion for summary

judgment. For the reasons set forth below, Dupps' motion is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2007, Plaintiff Kenneth Riggs ("Riggs") was injured at the Valley

Proteins rendering plant in Ward, South Carolina ("Valley Proteins"), while working on a Dupps

320U Supercooker ("Supercooker") designed and manufactured by Dupps. On the day of the

incident, Riggs was asked to investigate a problem with the sight glass on the Supercooker.

Riggs "put on . . . fall protection equipment, a harness and lanyard, because he was going to be

elevated over six feet and was concerned about slipping." (Pls.' Mem. Opp'n Summ. J. 4.)

"This was a necessary precaution, as the work area could be slick due to the presence of animal

fat being processed in the cooker." (Am. Compl. ¶ 13.) After inspecting various parts of the

Supercooker, Riggs "detached his lanyard, hooked it to the D-ring on the front of his harness

and went to get down. At that moment, however, his lanyard became entangled in the bolts

protruding from the adapter flange and he was pulled on to the shaft." (Pls.' Mem. Opp'n

Summ. J. 5.)  "After calling 911, [the plant manager] assisted other Valley Proteins' personnel in cutting Mr. Riggs down from the machine.  [They] worked to disentangle Mr. Riggs' harness which was wrapped around the shaft.  Eventually, they were able to free Mr. Riggs from the equipment."  (Id.)

As a result of the incident, Riggs has allegedly suffered debilitating injuries.  Riggs filed the instant suit against Dupps on January 9, 2008, asserting strict liability, negligence, and breach of implied warranty claims, alleging that the rotating shaft on the Supercooker was unreasonably dangerous because it was not properly guarded.  Riggs' wife, Ranee Riggs ("Mrs. Riggs"), also asserts a cause of action for loss of consortium.   Dupps filed the instant motion for summary judgment on March 5, 2009.  Riggs filed a response on April 3, 2009, and Dupps filed a reply on April 13, 2009.  Dupps seeks summary judgment on all of Riggs' claims alleging that Riggs cannot establish that the Supercooker was defective or unreasonably dangerous.

## II. DISCUSSION OF THE LAW

### A.  Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-

2

movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion."  Malina v. Baltimore Gas & Elec. Co., 18 F. Supp. 2d 596, 604 (D. Md. 1998).

## B.  Defendant's Motion for Summary Judgment

### 1.  Application of OSHA Regulations

Dupps argues that it is entitled to summary judgment on Plaintiffs' negligence, strict liability, and breach of implied warranty claims because Plaintiffs' experts, Dr. John Hoffman ("Dr. Hoffman") and Dr. Russ Hunt ("Dr. Hunt"), rely solely on inapplicable Occupational Safety and Health Administration ("OSHA") regulations, 29 C.F.R. §§ 1910.2, et. seq., in formulating their opinion that the Supercooker is unreasonably dangerous.

> [I]n order to find liability under any products liability theory, a plaintiff must show:
> (1) he was injured by the product; (2) the injury occurred because the product was
> in a defective condition, unreasonably dangerous to the user; and (3) that the
> product at the time of the accident was in essentially the same condition as when it
> left the hands of the defendant.

Bragg v. Hi-Ranger, Inc., 462 S.E.2d 321, 326 (S.C. Ct. App. 1995).

3

Plaintiffs' experts allege that the rotating shaft on the Supercooker was defective because it was unguarded. Plaintiffs' experts "have opined that the [Supercooker] was defective because . . . it did not meet the requirements of the [OSHA] for machine guarding. Specifically, both Hoffman and Hunt rely upon 29 C.F.R. § 1910.212(a)(1), a general OSHA regulation regarding machine guarding." (Def.'s Mem. Supp. Summ. J. 4.) (citation omitted). "Hoffman and Hunt contend that because the rotating shaft of the [Supercooker] was not protected with a guard of the type specifically listed [29 C.F.R. § 1910.212], the guarding does not satisfy OSHA requirements, which rendered the [Supercooker] defective or unreasonably dangerous at the time of Riggs' accident." (Id.) Dupps submits that OSHA regulations do not apply to product manufacturers such as Riggs because OSHA regulations apply "only to employers." (Def.'s Mem. Supp. Summ. J. 5.) Thus, Dupps argues that OSHA regulations cannot be used to establish industry standards for evaluating whether the rotating shaft is defective and therefore, Drs. Hunt and Hoffmans' expert opinions are not relevant. Dupps alleges that without Drs. Hunt and Hoffmans' expert opinions, Plaintiffs' product liability claims fail.

Plaintiffs argue that OSHA regulations are applicable and admissible in this case because "the very contract between . . .Valley Proteins, and the Dupps Company for the design, manufacture and installation of . . . [the Super]cooker, required that Dupps make certain that all of the equipment and the installation of the equipment complied with OSHA requirements." (Pl.'s Mem. Opp'n Summ. J. 9.) Further, Plaintiff contends that Dupps' "own Standard Practices for the design of its equipment . . . expressly incorporate . . . OSHA provisions." (Id.) Thus, Plaintiff argues that "the OSHA regulations being challenged through Defendant's summary judgment motion have repeatedly been adopted and incorporated by Dupps into its design and

4

manufacturing process and, as a result, these provisions are highly probative to issues concerning duty of care and defects existing in the industrial equipment it manufactures." (Id. at 11.)

In the Installation Services Agreement ("Agreement") between Dupps and Valley Proteins for the supply and installation of the Supercooker, Dupps agreed that "[t]he equipment and installation of same, *shall comply with OSHA requirements*, except for painting." (Pls.' Mem. Opp'n Summ. J. Ex. D (Agreement) (emphasis added).) Additionally, Dupps' Design Guidelines for Product Safety specifically reference OSHA regulations that pertain to machine guarding requirements, including 29 C.F.R. § 1910.212. (Id. Ex. R (Dupps' Design Guidelines for Product Safety).) Accordingly, the court finds that a question of fact exists regarding whether OSHA regulations are admissible as relevant evidence of industry standards and duty of care. Therefore, summary judgment on the issue of whether OSHA regulations are applicable is denied.

## 2. Compliance with OSHA and Other Industry Standards

In the alternative, Dupps argues that even if OSHA regulations apply, it has complied with all OSHA standards and other relevant industry standards because the rotating shaft on the Supercooker is guarded by location and therefore not unreasonably dangerous. Specifically, Dupps cites to 29 C.F.R. § 1910.219(c)(2)(i), an OSHA regulation that pertains to guarding horizontal shafting. Section 1910.219(c)(2)(i) provides: "All exposed parts of horizontal shafting seven (7) feet or less from floor or working platform . . . shall be protected by a stationary casing enclosing shafting completely or by a trough enclosing sides and top or sides and bottom of shafting as location requires." Dupps argues that "shafts which are more than seven (7) feet above the floor are guarded by location and do not require an additional physical

guard." (Def.'s Mem. Supp. Summ. J. 9.)  The rotating horizontal shaft involved in Riggs' injury is ten feet, three inches (10'3") above the floor.  (<u>Id.</u> Ex. C. (Dr. Hoffman Dep. 80).)  As such, Dupps argues that it was not required to provide any additional guard.

Plaintiffs argue that regardless of the height of the rotating shaft, a physical guard was required because it was reasonably foreseeable that the shaft exposed employees to a hazard. According to Plaintiffs, "while safeguarding by location and distance may be appropriate in some circumstances, where it is reasonably foreseeable to the equipment design engineer and manufacturer that there are circumstances in which employees would be exposed to the hazard during the cooker's operation, it should be protected with a physical guard." (Pls.' Mem. Opp'n Summ. J. 17.)  Dr. Hoffman and Dr. Hunt state that guarding the Supercooker's rotating shaft by location alone was unreasonably dangerous and improper in this case.  (<u>Id.</u> Ex. U (Dr. Hunt Dep. 133-41); Ex. V (Dr. Hoffman Dep. 83).)  Dr. Hoffman testified that guarding by location was an insufficient and unacceptable attempt to mitigate hazards because Dupps was aware that people could be in the area of the rotating shaft and "having that knowledge, that's what gives the knowledge to eliminate the hazard in this case, to mitigate the hazard by placing the guard there, because the hazard was there and they recognized it." (Pls.' Mem. Opp'n Summ. J. Ex. V (Dr. Hoffman Dep. 100, 104-105).)

Additionally, Eugenia Kennedy ("Kennedy"), one of Dupps' safety design experts, agreed that when it is anticipated or reasonably foreseeable that employees will frequent areas around rotating parts, physical guarding is more appropriate than safeguarding by location.  (<u>Id.</u> Ex. J (Kennedy Dep. 58-59).)  Kennedy further stated that if an employee is "going to interact with a

piece of equipment, such that they will be close to a rotating shaft then, obviously, you need to

safeguard it by having a fixed barrier or enclosure. (Id. 59.)

      According to OSHA's "Concepts and Techniques of Machine Safeguarding" manual,

      [t]o consider a part of a machine to be safeguarded by location, the dangerous
      moving part of a machine must be so positioned that those areas are not accessible
      or do not present a hazard to a worker *during the normal operation of the machine.*
      This may be accomplished by locating a machine so that the hazardous parts of the
      machine are located away from operator work stations or other areas where
      employees walk or work . . . . Another possible solution is to have dangerous parts
      located high enough to be out of the normal reach of any worker.

Concepts and Techniques of Machine Safeguarding, OSHA Publication 3067, 42-43 (1992),

http://www.osha.gov/Publications/osha3067.pdf (emphasis added). Plaintiffs allege that

      the [Super]cooker was designed such that an employee would need to be in the
      area [of the rotating shaft] to tighten the packing, cycle valves to get a reading on
      the gauges, check the gauges themselves, work on the control wheel discharge, and
      work on the sight glass while the cooker was running.[1]

(Pls.' Mem. Opp'n Summ. J. 4; Ex. K (Clint Riggs' Dep. 75).) Dupps argues that Plaintiffs have

failed to establish that during the normal operation of the Supercooker, an employee is "required,

or had any reason, to be standing over the rotating shaft at any time during the operation of the

machine." (Def.'s Reply 9.)

      Whether the Supercooker was sufficiently guarded by location depends on whether a

worker is exposed to the rotating shaft when interacting with the machine in a proper manner

_____

      [1]According to Clint Riggs, an employee at Valley Proteins, it is Valley Proteins' practice
to tighten glands while the shaft is running despite the fact that the instruction manual for the
Supercooker contains a warning that provides that the packing gland must not be adjusted while
the shaft is turning and failure to follow that instruction could result in injury. Clint Riggs also
explained that the machine must remain running in order to cycle the valves and check the
gauges; an employee would have to be in the area of the rotating shaft in order to perform these
tasks. (Pls.' Mem. Opp'n Summ. J. Ex. K (Clint Riggs' Dep. 52-53; 75-77).)

during the normal operation of the machine.  The court finds that a material factual dispute exists regarding the proper use of the machine and whether an employee is required to work on the Supercooker while the machine is still in operation.  Further inquiry into the facts of the case is necessary to clarify whether Dupps complied with OSHA standards, if applicable, as well as other relevant industry standards regarding machine guarding.  Thus, summary judgment on this issue is denied.

### 3. Open and Obvious Risk of Harm

In addition, Dupps moves for summary judgment on Plaintiffs' claims arguing that the rotating shaft of the Supercooker was a known danger that "Riggs and his employer knew (or should have known)" about.  (Def.'s Mem. Supp. Summ. J. 14.)  "[A] product is not defective for failure to warn of an open and obvious danger."  Moore v. Barony House Restaurant, LLC, 674 S.E.2d 500, 504 (S.C. Ct. App. 2009).  Thus, "a product cannot be deemed either defective or unreasonably dangerous if a danger associated with the product is one that the product's users generally recognize."  Id.  According to Dupps, "[i]t was . . . generally known that workers had to be more cautious around the shaft because of an increased risk of injury . . . .  The dangers associated with working around the [Supercooker's] rotating shaft were open and obvious."  (Id.)

Plaintiffs argue, however, that the risk that "someone's clothing or safety equipment could get caught in the bolts protruding from the adapter flange while they were working in that general area" was not an open and obvious risk.  (Pls.' Mem. Opp'n Summ. J. 9.)  According to Dale Robertson ("Robertson"), Valley Proteins' plant manager, he did not recognize any hazard or danger while watching Riggs work within the general area of the rotating shaft.  (Pls.' Mem. Opp'n Summ. J. Ex. L (Robertson Dep. 91).)

8

Additionally, Dr. Hunt, Plaintiffs' human factors expert testified as follows:

> Q. So you would agree that the rotating part was open and obvious, that it wasn't hidden in any way?
>
> A. Well, it certainly wasn't an open and obvious hazard. It was seeable, and probably if he had it pointed out to him, he could have appreciated the level of hazard there. But certainly it's spinning very slowly. It doesn't–it wouldn't appear, I wouldn't think, to an experienced person like himself or a casual observer to be an obvious . . . hazard, like a saw blade, a lawn mower blade or something like that.

(Pls.' Mem. Opp'n Summ. J. Ex. U (Dr. Hunt Dep. 122-23).) Riggs also testified that he has performed the same procedure in the past under similar conditions, in the same area where the incident occurred and in those times, "[i]t never, ever come into [his] mind that it was a danger point. [His] biggest concern when [he] was up there was falling. So [he] made sure [he] was tied off." (Pls.' Mem. Opp'n Summ. J. Ex. M (Riggs Dep. 44).) Based on the foregoing, genuine issues of material fact exist regarding whether the risk of a worker's clothing or safety gear becoming entangled in the bolts from the adapter flange was an open and obvious risk. Accordingly, summary judgment on this issue is denied.

### 4.  Service or Maintenance

Next, Dupps requests that the court "mak[e] a finding that Riggs was engaged in 'servicing and/or maintenance' work" at the time of his accident. (Defs.' Mem. Supp. Summ. J. 15.) When summary judgment is not granted on an entire action, the court may, in its discretion, "determine what facts are not genuinely at issue." Fed. R. Civ. P. 56(d)(1). Dupps seeks a finding that there is no material issue of fact regarding whether Riggs was engaged in maintenance work at the time of his accident.

9

OSHA Regulations require "employers to establish a program and utilize procedures for affixing appropriate lockout devices or tagout devices [("lockout/tagout")] to energy isolating devices, and to otherwise disable machines or equipment to prevent unexpected energization, start-up or release of stored energy in order to prevent injury to employees." 29 C.F.R. § 1910.147(a)(3)(i). Lockout/tagout is required when an employee services or performs maintenance of machines and equipment. § 1910.147(a)(2)(i). However, an exception to the lockout/tagout requirement exists for "[m]inor tool changes and adjustments, and other minor servicing activities, which take place during normal production operations . . . if they are routine, repetitive, and integral to the use of the equipment for production, provided that the work is performed using alternative measures which provide effective protection." § 1910.147 (Note).

Plaintiffs contend that Riggs was not performing service or maintenance as defined by OSHA regulations. According to Dr. Hoffman, Riggs' activity did "not require shutting down the equipment under [Valley Proteins'] lockout/tagout policy." (Pls.' Mem. Opp'n Summ. J. Ex. EE (Dr. Hoffman Report 4).) Based on the foregoing, whether the activities performed by Riggs at the time of his accident fall within the exception to the OSHA regulations is a material factual dispute. Accordingly, Dupps' request for a determination of fact by the court is denied.

### 5. Punitive Damages

Dupps also seeks summary judgment on Riggs' demand for punitive damages. However, Plaintiffs have not sought relief in the form of punitive damages in its complaint or amended complaint. Accordingly, this issue is moot.

10

**6. Loss of Consortium Claims**

Lastly, Dupps argues that it is entitled to summary judgment on Mrs. Riggs' loss of consortium cause of action.  Because the court has denied Dupps' motion for summary judgment as to Riggs' product liability claims, the court also denies Dupps' motion for summary judgment as to Mrs. Riggs' loss of consortium claim as it is a derivative claim dependent upon the success of Riggs' claims.  See Sheppard v. CSX Transp., Inc., No. 01-4312, 2002 WL 34378297, at *14 (D.S.C. Nov. 8, 2002)  (unpublished) (finding that wife's claims were "solely for loss of consortium and, therefore, entirely dependant upon her husband having a viable claim against Defendant").  Based on the foregoing, the court denies Defendant's motion for summary judgment.

Therefore, it is

**ORDERED** that Defendant's motion for summary judgment, docket number 44, is denied.

**IT IS SO ORDERED.**

> s/Henry M. Herlong, Jr.
> United States District Judge

Greenville, South Carolina
April 28, 2009